UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**DUODESK, LLC**                                             CIVIL ACTION

**VERSUS**                                                    NO: 14-1363

**GEE HOO INDUSTRIAL CORP.**                                 SECTION "A" (3)

### POST-TRIAL MEMORANDUM OF GEE HOO INDUSTRIAL CORPORATION

After a three day trial with lengthy testimony from six witnesses and over 500 exhibits entered into evidence, it is clear that DuoDesk did not meet its burden of proving that the activeLife Trainer products manufactured by Gee Hoo are defective or that Gee Hoo breached its contract with DuoDesk or any other warranties applicable to the activeLife Trainers. What is clear, however, is that on March 24, 2014, DuoDesk agreed to a complete and final settlement with Gee Hoo regarding any claims that the machines were defective.

Likewise, regarding DuoDesk's breach of non-disclosure ("NDA") claim, DuoDesk never met its burden of proving any breach by Gee Hoo. To the contrary, it was established that the two Gee Hoo machines purportedly in violation of the NDA were based on Gee Hoo's own products manufactured prior to DuoDesk's involvement, the same types of products were already being sold in the market by other companies, <u>and</u> Gee Hoo's versions were different from the machines that Gee Hoo manufactured for DuoDesk.

Even if this Court were to somehow find Gee Hoo liable under either the product defect or NDA claims, DuoDesk did not prove entitlement to damages under either theory.

    **I.**    **DEFECTIVE PRODUCT CLAIM**

> "In the email below, you had offered to take back the remaining aLT units and refund our money. **We would like to accept that offer**. At this point, there are 158 units at the Seattle warehouse. We have an additional 14 defective units for a total of 172 units. We paid you $155 per unit. So for 172 units this would be $26,660. **We will release these units for return shipment to you as soon as we receive your payment.**"[1]

---

[1] Joint Ex. No. 50 (emphasis added).

This statement, contained in a March 24, 2014 e-mail from Mrs. Chunlin Leonhard on behalf of DuoDesk clearly settles all claims related to DuoDesk's "allegations" of defective products and is not limited to any particular cause of action.  At trial, Mrs. Leonhard testified that she sent this particular e-mail after various discussions between the parties concerning ways to deal with the dispute and in response to Mr. Hank Hsu's e-mailed dated February 18, 2014, in which he relayed Gee Hoo's offer to resolve the dispute in three alternative ways, one of which was to refund DuoDesk's money in exchange for the return of the allegedly defective units.[2] Mrs. Leonhard, an attorney and law professor at Loyola University specializing in contracts, testified that she prepared and sent the March 24, 2014 e-mail to accept Gee Hoo's offer to take back the machines.  Mrs. Leonhard admitted that the language she used in that e-mail is absolutely clear and unequivocal and fully represented DuoDesk's intentions as of March 24, 2014.  Therefore, this case was over and compromised as of March 24, 2014.  It was only after Gee Hoo declined DuoDesk's proposal to invest in a joint venture that DuoDesk chose to renege on the settlement and keep the machines.  Joint Ex. No. 311, 333.

### A. The Dispute Alleged in DuoDesk's Original Complaint Was Compromised And/Or Extinguished.

La. C.C. article 3071 defines a compromise as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or uncertainty concerning an obligation or other legal relationship."[3]  There are three elements of a compromise: (1) a disputed claim; (2) a tender of a certain amount in settlement of that claim; and (3) an acceptance.[4]

---

[2] Joint Ex. No. 49.
[3] LA. C.C. art. 3071.  "The purpose of a compromise, therefore, is to prevent or to put an end to litigation." *Rivett v. State Farm Fire & Cas. Co.*, 508 So. 2d 1356, 59 (La. 1987).  "Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it."  *Waste Management of LA, LLC v. Par. of Jefferson ex rel.*, 66 F. Supp. 3d 761, 80 (E.D. La. 2014) (citation omitted).
[4] *Audubon Ins. Co. v. Farr*, 453 So.2d 232 (La. 1984) (citation omitted).  Under La. C.C. article 3080, a compromise precludes subsequent actions on the subject matter that was the object of the compromise

In this case, the three elements of a compromise are met as evidenced by the following chain of e-mails in chronological order that reflect a dispute or uncertainty regarding product defects, tender by Gee Hoo of the refund, and acceptance by DuoDesk.

- January 28, 2014: Dr. Leonhard reported the alleged defects to Mr. Hsu and asked Mr. Hsu to "let [him] know how [he] would like to **resolve these problems**."[5]

- January 28, 2014: Mr. Hsu responded that he is "**surprised** to see the products defects situation, due to we did serious inspection for this lot that as we talked in our factory."[6]

- February 5, 2014: Mrs. Leonhard and Mr. Hank Hsu discussed the alleged defects related to the activeLife Trainers. Mr. Hsu requested that Dr. Leonhard go to the Seattle warehouse to spot-check product quality of the machines in storage.[7]

- February 10, 2014: Mrs. Leonhard e-mailed Mr. Hsu summarizing their discussion about the alleged product quality problems and how to solve them.[8]

- February 10, 2014: Mr. Hsu again requested that Chris go to the Seattle warehouse and check the machines.[9]

- February 18, 2014: Mr. Hsu **offered to resolve the dispute** in three alternative ways, one of which was to refund DuoDesk's money in exchange for the return of the allegedly defective units.[10]

- March 12, 2014: Mrs. Leonhard **thanked Mr. Hsu for his offer** to take back the machines and agreed that this could be a way **to resolve the problem**. She asked Mr. Hsu if she could "talk to [him] about the details of this plan including any other possible solutions."[11]

- March 13, 2014: Mrs. Leonhard and Mr. Hank Hsu discussed the alleged product defect situation.[12]

- March 24, 2014: Mrs. Leonhard e-mailed Mr. Hsu **formally accepting** the terms of his February 18, 2014 offer to refund DuoDesk's money in exchange for the return of the allegedly defective units.[13]

---

[5] Joint Ex. No. 46.
[6] Joint Ex. No. 47 at p. DuoDesk 1417.
[7] Joint Ex. No. 48 at p. DuoDesk 1482-1483.
[8] Joint Ex. No. 48 at p. DuoDesk 1482.
[9] Joint Ex. No. 48 at p. DuoDesk 1481.
[10] Joint Ex. No. 49.
[11] Joint Ex. No. 326.
[12] Joint Ex. No. 50.
[13] Joint Ex. No. 50.

- March 25, 2014: Dr. Leonhard thanked Mr. Hsu for taking back the machines and e-mailed Mr. Hsu an invoice for the refund of $26,660.00 and DuoDesk's bank wiring information.[14]

- March 25-26, 2014: Gee Hoo **wired** $26,660.00 to DuoDesk.

- March 28, 2014: Mr. Hsu asked Dr. Leonhard to confirm that DuoDesk received the payment in accordance with the invoice and to let him know the warehouse return schedule.[15]

- March 28, 2014: Dr. Leonhard responded to Mr. Hsu confirming that **DuoDesk received the payment** and thanking Mr. Hsu for the refund.[16]

These e-mails, corroborated by the testimony at trial, make it clear that DuoDesk chose to settle all claims relating to its allegations of defective products when it accepted Gee Hoo's offer take back the machines and kept the $26,660 refund. It is difficult to discern how Mrs. Leonhard, a lawyer and law professor who has written extensively on contract law, did not mean for this "clear and unequivocal" settlement to encompass any and all claims related to the defective machines. This is especially true when all of the elements of DuoDesk's claims regarding the alleged defective machines – whether breach of contract or redhibition – were in place as of March 24, 2014 when the settlement was reached. Furthermore, DuoDesk takes the position that its Original Complaint is broad enough to encompass redhibition, even without specifically naming or pleading the elements of a redhibition or requesting attorney's fees. If DuoDesk's position in that regard is allowed to stand, then surely the settlement agreement communications are equally broad enough to cover any claim in redhibition.

### A. Redhibition Claim

In the event the Court should find that the above described settlement agreement somehow did not address a redhibition claim, the following analysis shows that the claim is either not before the Court or cannot succeed on the merits.

---

[14] Joint Ex. No. 330; Joint Ex. No. 52 (invoice for refund).
[15] Joint Ex. No. 330.
[16] Joint Ex. No. 330.

1. **DuoDesk Has Not Asserted a Claim for Redhibition.**

As set forth in Gee Hoo's Pre-Trial Memorandum (Rec. Doc. 187), DuoDesk's Complaint is not sufficient to state a claim for redhibition.[17] In order to bring an action in redhibition, the plaintiff "must allege one of the basic elements of the action."[18] A plaintiff's failure to allege that the thing sold is either absolutely useless for its intended purpose or its use is so inconvenient that he would never have purchased it had he known of the defect is fatal to any claims for recovery couched in redhibition.[19] None of these allegations appear in DuoDesk's Original Complaint. (Rec. Doc. 1).

Further, the evidence at trial showed that the contract between DuoDesk and GeeHoo was one to *build* and not a contract of *sale*. *See*, 24 La. Civ. L. Treatise, Sales § 1:10; *Riley Stoker Corp. v. Fid. & Guar. Ins. Underwriters, Inc.*, 26 F. 3d 581, 591 (5th Cir. 1994) (the performance of a custom design and manufacturing can be sufficient to establish that a contract's obligation is one "to do" rather than "to give.").[20] Accordingly, the laws of redhibition do not apply here.

2. **DuoDesk Failed to Carry Its Burden of Proving Redhibition.**

Even if redhibition is considered on the merits, DuoDesk was required to prove: 1) Gee Hoo sold a thing to it and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, had it been known, it would never have purchased it; 2) the defect was non-apparent at the time of the sale; and 3) Gee Hoo was given the opportunity to repair the defect. At trial, DuoDesk failed to carry this burden. La. C.C. art. 2520.

---

[17] Federal Rule of Civil Procedure 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted may be raised in a pleading, by a motion for judgment on the pleadings, or even for the first time "**at trial**."
[18] *Orr v. Jones*, 11-1085 (La. App. 5 Cir. 5/31/12); 95 So. 3d 583, 588 (citation omitted).
[19] *See id*.
[20] *See also, ConstructionSouth, Inc. v. Fire Windows & Doors, Inc.*, 2013 WL 3242728 (E.D. La. 1-25-13); *Conmaco, Inc. v. Southern Ocean Corp.*, 581 So. 2d 365, 369 (three factors to determine whether a contract is to sale or to build is whether buyer has some control over the specifications, whether the negotiations over the contract take place before the object is built/made, and whether the contract contemplates that the party will merely supply materials or furnish his skill and labor to build the object) (other citations omitted).

Starting with the first element, DuoDesk argued at trial that the products were for retail and that it can no longer sell them at retail prices due to alleged defects. However, DuoDesk did not put on any evidence that it intended to sell the machines for retail purposes other than the self-serving testimony of Dr. Leonhard. This testimony was outweighed by the objective evidence that the only initial sales made were to ACT for a University of Iowa research study and to Dr. Leonhard's colleagues in the behavioral psychology sector.[21] Furthermore, Dr. Leonhard had no reasonable explanation for the statements on DuoDesk's website that the activeLife Trainers were made for "field trials" nor could he explain why DuoDesk never dropped the price of the machines from their initial supposedly "retail" sale price of $495.00, even though it claims to have been forced to change its market strategy from retail to research sales.[22]

In addition, Dr. Leonhard admitted on the stand that the activeLife Trainers are not useless. In fact, on March 28, 2014, Dr. Leonhard wrote Mr. Hank Hsu an e-mail stating:

> "In spite of the problems with the machines, the results are outstanding and people love these machines."[23]

Approximately five weeks later, on May 11, 2014, *after Gee Hoo declined DuoDesk's offer to participate in a joint venture*, Dr. Leonhard advised Mr. Hank Hsu that DuoDesk would not be returning the remaining machines to Gee Hoo because he realized he could use the remaining activeLife Trainers for research.[24]

Subsequently in August of 2014, Dr. Leonhard informed Mr. Hsu that DuoDesk was managing to sell the product for a profit on its website with disclaimers.[25] These disclaimers, identified by Dr. Leonhard on cross examination, indicate that the "problems" are not significant

---

[21] Joint Ex. No. 537.
[22] Joint Ex. No. 61, p. 5, 7; compare to Joint Ex. No. 537 (spreadsheet showing initial units sold for $479-$495).
[23] Joint Ex. No. 330.
[24] Joint Ex. No. 53 (5-11-14 E-mail from Chris Leonhard to Hank Hsu); Joint Ex. No. 311, 333.
[25] Joint. Ex. No. 54 (8-13-2014 E-mail from Chris Leonhard to Hank Hsu re: status of machines).

and can be easily addressed using simple measures. (*See*, Joint Exhibit No. 61, at p. 5, stating that the squeaking can be fixed "with a dab of silicone or lithium grease."). The only other "defect" noted on DuoDesk's website is the need to change the sensor batter often if the product is used continuously.[26] Dr. Leonhard admitted that this latter issue with the sensor battery had nothing to do with Gee Hoo's manufacture of the machines. Finally, the website notes that neither of these problems interferes with the use of the machines and that the machines have "held up very well" in field trials.[27]

DuoDesk likewise failed to meet the second required element of redhibition, which is that the alleged defects in the activeLife Trainer were non-apparent at the time of the sale.[28] The evidence shows that Dr. Leonhard knew about the very product characteristics that he is now claiming render the products useless over three (3) months prior to their shipment.[29] What is more, on August 10, 2013, Dr. Leonhard advised Mr. Hsu that the prototype he received "began making squeaking noises" "after a few hours of use."[30] In addition, during the trial, Dr. Leonhard's testimony corroborated evidence showing that he travelled to Gee Hoo's facility in Taiwan to inspect the activeLife Trainers and noticed the very defects that he is now claiming render the machines useless.[31] Lastly, the evidence and testimony of Dr. Leonhard and Mr. Hank Hsu established DuoDesk's failure to make any attempt to inspect the vast majority of the units delivered to Seattle.[32]

---

[26] Joint Ex. No. 61 at p. 5 (www.activelifetrainer.com).
[27] Joint Ex. No. 61 at p. 5 (www.activelifetrainer.com).
[28] LA. C.C. art. 2521.
[29] Joint Ex. No. 31 (8-15-2013 E-mail from Chris Leonhard to Hank Hsu re: "mini prototype" with attachments).
[30] Joint Ex. No. 31 at DuoDesk 0002423 (8-15-2013 E-mail from Chris Leonhard to Hank Hsu re: "mini prototype" with attachments).
[31] Joint Ex. No. 46 (1-28-2014 E-mail from Chris Leonhard to Hank Hsu re: Urgent: Product Defect Problem).
[32] See, e.g., Joint Ex. No. 50 at Duodesk 1656 –1657.

Lastly, and perhaps most significantly, DuoDesk chose not to give Gee Hoo an opportunity to repair the alleged defective machines, which is fatal to its redhibition claim.[33] Even though manufacturers of things may be presumed to know of the existence of defects, <u>a manufacturer ignorant in fact of a defect is entitled to notice and an opportunity to attempt repair of the defect</u>.[34]  This is consistent with La C.C. art. 2522 comment (b) which states, "under this article, a seller who has actual knowledge of the existence of a defect in the thing sold need not be notified.  On the other hand, a seller who is merely presumed to have knowledge of a defect in the thing—as, for instance, a manufacturer—<u>by operation of law is entitled to receive notice</u>." (emphasis added).[35]  The evidence was undisputed at the trial that DuoDesk did not give Gee Hoo the opportunity to repair the alleged defects in the products, having elected to resolve and settle the claims as set forth in the March 24, 2014 e-mail rather than allow Gee Hoo an opportunity to repair.

### B. DuoDesk's Breach of Product Quality Agreement Claim

DuoDesk failed to prove by a preponderance of the evidence that Gee Hoo did not perform its obligations under the Purchase Order (Joint Ex. No. 33, p. DuoDesk 2466) and the Product Quality Agreement (Joint Ex. No. 73).  Specifically, there is no evidence that Gee Hoo did not adhere to any of the specific product quality markers set forth in the parties' agreements. All of Gee Hoo's quality control documents clearly show that the specific quality specifications were met for each machine.[36]  The quality control records show that each specification agreed to by DuoDesk was thoroughly checked by Gee Hoo for each and every machine.   (Joint Ex. No.

---

[33] Joint Ex. No. 49 (Feb. 18, 2014 E-mail from Chunlin Leonhard forwarding e-mail from Hank Hsu re: defective units); Joint Ex. No. 50 (Mar. 24, 2014 E-mail from Chunlin Leonhard to Hank Hsu re: Seattle warehouse, etc.).
[34] 24 Dian Tooley–Knoblett & David Grunning, LA. CIV. L. TREATISE, Sales § 11.12 (2012).
[35] Further, while La. C.C. art. 2531 revision comment (c) states that "a manufacturer need not be provided an opportunity to repair," this "is inconsistent [with art. 2522] and . . . should be disregarded as having been written earlier than the text of C.C. art. 2522 ¶2." 24 LA. CIV. L. TREATISE, Sales § 11:12, n. *9.
[36] Joint Ex. No. 554 (Gee Hoo QC Records of 209 activeLife Trainers, English translation, and Affidavit of Lan Zhe).

554A). DuoDesk tried to make the Court believe that the quality control records showed that the problems in the machines existed when they left the factory for shipment. To the contrary, the records show that each machine did not leave the factory until the specifications were met. This is evident by the check-marks shown on each line item specification and the overall "OK" stamp that was placed at the bottom of the record prior to its shipment to Seattle. (Joint Ex. No. 554A). Further, the most common complaint by DuoDesk during the trial was the track width of the roller wheels of the activeLife Trainers, i.e. if the track width was too wide, the wheels would squeak. With respect to this issue, each and every quality control record for the machine shows that the roller track width was within DuoDesk's specification of between 2 and 7 mm prior to shipment.[37] Finally, it was DuoDesk who chose the packaging specifications and Dr. Leonhard confirmed in his testimony at trial that Gee Hoo packaged the machines "100% according to the [agreed upon] packaging specifications."[38] Therefore, any problems that occurred after the machines left Gee Hoo's factory are not Gee Hoo's responsibility.

Further, the record evidence shows that Gee Hoo offered to refund the purchase price of the alleged defective machines within two weeks of being notified by DuoDesk of the alleged problems.[39] Gee Hoo also issued the $26,660 refund for the machines within one (1) day of receiving the invoice from DuoDesk.[40] This shows that Gee Hoo never attempted to evade its responsibilities under the parties' agreements, which set forth this exact remedy in the event of a defect situation, and fully complied with the agreed upon settlement.[41]

---

[37] See Joint Ex. 554A, bottom left in handwriting that shows such measurements.
[38] Joint Ex. No. 47 (1-29-14 e-mail from Dr. Leonhard to Mr. Hank Hsu).
[39] Joint Ex. No. 49 (2-18-14 e-mail from Mr. Hank Hsu to Chunlin Leonhard).
[40] Joint Ex. No. 328 (3-25-2014 E-mail from Chris Leonhard to Hank Hsu re: taking back machines, invoice and bank information for money transfer is attached).
[41] Joint Ex. No. 33, Duodesk 2466 (Purchase Order) and Joint Ex. No. 73 (Product Quality Agreement).

### C. DuoDesk's Claim for Damages for Alleged Defective Machines

Finally, there is no evidence of any monetary damage that could possibly be tied any action by Gee Hoo. In a breach of contract or warranties claim, the plaintiff bears the burden of proving his damages within a reasonable certainty.[42]

#### 1. Lost Profits

That is, the plaintiff must prove that the loss of profits is more probable than not.[43] A claim for loss of profits will not be supported by mere estimates of loss.[44] **Further, a claim for lost profits based solely on the testimony of the injured party and unsubstantiated by other evidence does not constitute reasonable certainty**.[45]

Here, DuoDesk has clearly suffered no compensable damage as a result of any action by Gee Hoo. As pointed out by Mr. Jason MacMorran, expert for Gee Hoo, the statements contained in the unaudited QuickBook records prepared by Dr. Leonhard contain numerous obvious errors with regard to DuoDesk's claimed expenses, i.e., in-flight beer charges, charges for legal fees in 2010, and charges for credit card service fees.[46] While on the stand, Mr. MacMorran also pointed out that the financial data shown in DuoDesk's sales logs and profit and loss detail contain irreconcilable discrepancies in unit amounts and sales.

As the below excerpt from Joint Exhibit No. 588, Exhibit #4, illustrates, even if one were to assume that Dr. Leonhard's claimed expenses were valid, Mr. MacMorran's uncontroverted expert testimony showed that any damage that might have been suffered was minimal.

---

[42] .*B.N. Morris v. Homco Intern. Inc.,* 853 F.2d 337 (5th Cir. 1988); *Eximco, Inc. v. Trane Co.,* 748 F.2d 287 (5th Cir. 1984) (breach alone which forced plaintiff out of business does not entitle plaintiff to damages for lost profits).
[43] *Jordan v. Travelers*, 245 So. 2d 151 (1951).
[44] *Shreveport Laundries v. Red Iron Drilling Co.,* 192 So. 895 (La. App. 2nd Cir. 1939).
[45] *Towing & Recovery Prof. of Louisiana Trust v. Swift Transp. Co.*, 2009 WL 1605150 (La. E.D. 6/8/2009);
[46] Joint Ex. No. 549D.

| | Using Available Financial Statement Data | | |
|---|---|---|---|
| | Units | Price/Cost | Amount |
| Maximum Revenues | 210 | $ 495 | $ 103,950 |
| Less: Actual Revenues | 66 | 464 | 30,631 |
| Maximum Lost Revenues | 144 | | 73,319 |
| Available Variable Costs | | | |
| Unit Cost | 144 | $ 155 | 22,320 |
| Additional Charge in Costs of Goods Sold | 144 | 77 | 11,097 |
| Freight Cost[2] | 144 | 16 | 2,260 |
| Warehousing Cost[3] | 144 | 42 | 5,991 |
| Total Available Variable Costs | | 289 | 41,668 |
| Potential Lost Profits | | | 31,651 |
| Actual Refund Received | | | (26,660) |
| **Potential Net Claim** | | | $ 4,991 |

### 2. Development costs

DuoDesk has clearly suffered no compensable damage as a result of any action by Gee Hoo. As pointed out by Mr. Jason MacMorran, expert for Gee Hoo, the statements contained in the unaudited QuickBook records prepared by Dr. Leonhard contain numerous obvious errors with regard to DuoDesk's claimed expenses, i.e., donation to Lusher PTA highlighted as a development cost in Joint Ex. No. 549D at p. 8. Further, the development costs are still useful to DuoDesk as it is currently having the activeLife Trainer manufactured by another company.

### 3. Credits Owed to Gee Hoo/Gee Hoo's Counterclaim

Any damages awarded to DuoDesk must be deducted by the set-offs and claims asserted by Gee Hoo. With respect to redhibition. any damages that DuoDesk may be able to recover at trial are subject to a reduction in the amount of the fruits the buyer has yielded. La. C.C. art. 2531. On or about March 25, 2014, Gee Hoo issued a refund of $26,660 to DuoDesk for the allegedly defective 172 activeLife Trainer units. In addition to the $26,660 refund amount, DuoDesk has recovered $30,631 in sale proceeds for the products as of February 11, 2016.[47] Thus, any amount that may be awarded to DuoDesk would be deducted by at minimum, $30,631 (the amount DuoDesk has recovered in sale proceeds) plus $26,660 (the amount of Gee Hoo's refund), which comes to $57,291. At trial, Gee Hoo proved that this deduction should be

---

[47] Joint Ex. No. 588, Exhibit #3.

significantly more than $57,291 since DuoDesk has benefited from the positive and successful research studies and media attention that the products have garnered to date.[48] Lastly, should the Court award DuoDesk damages for its investment or development costs, Gee Hoo proved that the amount awarded should also be offset by Gee Hoo's similar development costs as Gee Hoo raised this entitlement to set off as an affirmative defense and also has a pending Counterclaim for the recovery of such amounts.[49]

## II.     NON-DISCLOSURE AGREEMENT ("NDA") CLAIM

Turning to DuoDesk's NDA claim, the NDA – also written by Mrs. Leonhard – specifically states that it <u>does not</u> apply to information "*which the 'Receiving Party' has already known, [or] … is independently developed by the 'Receiving Party'*," or that "*which the public has already known*."[50] Both the LifeBalance Station and the activeLife Trainer were clearly based on Gee Hoo's existing products and information supplied by Mr. Hank Hsu. Therefore, the NDA does not apply to either product. It was established that any "ideas" that DuoDesk brought to the table were either <u>already within the public domain</u> or <u>are not being used by Gee Hoo</u> in its current prototypes.

### A.  *activeLife Trainer*

As to the activeLife Trainer, DuoDesk failed to prove that Success Behavior assigned its rights to DuoDesk or that the NDA even covered the activeLife Trainer. The NDA's terms specifically limit its scope to "*one patent-pending product (the 'product')*."[51] It was shown that the only patent pending product as of October of 2009 when the NDA was signed was the LifeBalance Station,[52] and that the development of the activeLife Trainer did not begin until the

---

[48] Joint Ex. No. 61 at pp. 15-25 (www.activelifetrainer.com), published Iowa studies at Joint Ex. No. 387A-D.
[49] *See* Gee Hoo's breakdown of these amounts in the Pre-Trial Order, Rec. Doc. #171, at p. 21-22.
[50] Joint Ex. No. 235, at p. GH 531 (translated NDA provided by Gee Hoo, at Section 2(b)) (emphasis added). Note that the translated NDA provided by DuoDesk (Joint Ex. 165) does not substantively differ from Joint Ex. No. 235.
[51] Joint Ex. No. 235, at p. GH 530.
[52] Joint Ex. No. 7, p. DuoDesk 3199,) (LifeBalance Station patent, shows provisional application date of 10-2-09).

year 2012.[53] Even if there was an assignment and coverage for the activeLife Trainer, the differences between the activeLife Trainer and Gee Hoo's 2014 Ankle Trainer model were made clear – even acknowledged through the testimony of DuoDesk's own expert, Mr. Robert Bartlett. Unlike the activeLife Trainer, Gee Hoo's 2014 Ankle Trainer model is obviously not intended to fit under a desk; has higher height configuration for both its axel and foot pedals; has a connected monitor on top of the unit; and its cup holder/machine stabilizer has a dual purpose and an entirely different configuration. This was shown through demonstrations of the physical machines during the testimony of Dr. Leonhard, Mr. Hank Hsu, and Mr. Robert Bartlett. Astonishingly, Mr. Bartlett testified that he believes these models to be the same even though his "expert" opinion was not based on actual dimensions. Nevertheless, Mr. Bartlett testified that he still believes these models to be the same because he is "pretty good at visualizing dimensions." This statement was easily proven untrue when a ruler was used in the courtroom to measure the height of the pedals and axle position.

It was also shown that Gee Hoo's 2014 Ankle Trainer model is identical to both the Gee Hoo 2010 and 2011 models, which were designed and built by Gee Hoo before Dr. Leonhard approached Gee Hoo to develop the activeLife Trainer. See, Joint Ex. No. 587, Figures A-2, B-2, and D-2. Therefore, Gee Hoo did not violate the NDA, which does not cover Gee Hoo's self-owned information. (Joint Ex. No. 235, p. GH 531, #2a,c). It was also shown that the Stamina model was already on the market as being used under a desk (Joint Ex. No. 561) and that DuoDesk's activeLife Trainer design is based 70% on the Stamina model.

---

[53] Joint Ex. No. 12 (Jan. 11, 2012 e-mail from Dr. Leonhard to Hank Hsu).

### B. *LifeBalance Station*

It was established at trial that DuoDesk's LifeBalance Station was based on Gee Hoo's 7004 model.[54] Dr. Leonhard simply had Gee Hoo lower the pedals and height configuration and then purchased a height-adjustable desk from a third party.[55] The testimony revealed that Gee Hoo did not install or have anything to do with the desk component, which was later added by DuoDesk to most, but not all, of the LifeBalance Stations manufactured by Gee Hoo. Mr. Hank Hsu testified that Gee Hoo modified its 7006 model by attaching a simple table-top to the machine and showed this machine at the TaiSPO tradeshow in 2014. Mr. Hsu also testified that Gee Hoo kept its original pedal height configuration of the 7006 model (i.e. did not lower it as it did for the 7004-modified LifeBalance Station). Therefore, Gee Hoo did not violate the NDA, which does not cover Gee Hoo's self-owned information. (Joint Ex. No. 235, p. GH 531, #2a,c).

Dr. Leonhard also admitted that DuoDesk only sold 30 LifeBalance Stations in 2011 and quickly got out of the market because they were too expensive and not marketable due to its weight and size.[56] It was not until nearly three (3) years after DuoDesk left the market and multiple other companies with almost identical machines entered the market that Gee Hoo chose to make a prototype of its *7006* model modified with an attached table. Mr. Hank Hsu named several other companies that were already selling such models as of 2014 (FitDesk, Deskcycle etc.). Dr. Leonhard even corroborated this evidence in an e-mail to Mr. Hsu in the year 2012 in which he claims that there is a "copy cat" machine of the LifeBalance Station on the market called "Oxidesk."[57] Since these products were already on the market, they were within the public domain and, thus, not subject to the NDA. (Joint Ex. No. 235, at p. GH 531, #2(b)).

---

[54] Joint Ex. No. 74, at p. DuoDesk 7762 with attached pictures (DuoDesk 7759-7761); Joint Ex. No. 77 (Dr. Leonhard, the 7004 model "is very close to what we need."
[55] Joint Ex. No. 77.
[56] Joint Ex. No. 31, at p. DuoDesk 2423, last full paragraph.
[57] Joint Ex. No. 21 (11-26-12 e-mail from Dr. Leonhard to Mr. Hank Hsu).

### C. No entitlement to Damages under the NDA/Trade Secrets Claim

Even assuming that Gee Hoo breached the NDA, there was no evidence whatsoever of DuoDesk's entitlement to "royalty" type or other monetary damage that could be tied in any way to an alleged breach by Gee Hoo. The testimony showed that Gee Hoo has never sold and is not actively marketing either of the machines that DuoDesk claims are similar to the LifeBalance Station and activeLife Trainer. In addition, for the reasons set forth above under the LifeBalance Station and activeLife Trainer sections, the development costs are not recoverable.

### III. Gee Hoo's Counterclaim Against Duodesk

Gee Hoo is seeking the return of the 172 allegedly defective units (or their equivalent value) or alternatively, the $26,600.00 refund, in addition to other costs described above plus attorney's fees, court costs, expert and interpreter fees, and judicial interest. In addition, DuoDesk admitted through the testimony of Dr. Leonhard that DuoDesk did not pay Gee Hoo any development costs for the activeLife Trainer. Gee Hoo is seeking the recovery of these amounts under a theory of detrimental reliance, pursuant to La. C.C. art. 1967. Gee Hoo is entitled to recover damages from Gee Hoo for the full extent of its losses arising from relying on DuoDesk's promise or representation that it would place a future order of machines. A breakdown of Gee Hoo's costs is set forth in the Pre-Trial Order, Rec. Doc. 171, p. 21-22.

       Respectfully Submitted:

       **PERCY, LANOUX & MUMPHREY**

   By: s/ *Erin Wiley Lanoux*
      Erin Wiley Lanoux (La. #28651)
      Robert Ryland Percy, III (La. #10418)
      John S. Troutman (La. #36059)
      712 North Burnside Avenue
      Gonzales, Louisiana 70737
      Phone: (225) 621-8522
      Fax: (225) 647-6959
      ***Attorneys for Gee Hoo Industrial Corporation***

-16-

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on all counsel of record by CM/ECF electronic service at Gonzales, Louisiana, this 27th day of May 2016.

s/ *Erin Wiley Lanoux*
Erin Wiley Lanoux, *Attorney at Law*
