**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DUODESK, LLC** | * | **CIVIL ACTION NO.: 2:14-cv-1363** |
| | * | |
| **VERSUS** | * | **SECTION A, MAGISTRATE 3** |
| | * | |
| **GEE HOO INDUSTRIAL** | * | **HONORABLE JUDGE JAY C. ZAINEY** |
| **CORPORATION** | * | |
| | * | **MAGISTRATE JUDGE DANIEL E. KNOWLES, III** |
| * * * * * * * * * * * * * * * * | * | |

**DUODESK LLC'S POST-TRIAL MEMORANDUM**

**TABLE OF CONTENTS**

I.   GEE HOO BREACHED THE PURCHASE ORDER AND PRODUCT QUALITY AGREEMENT BY SELLING PRODUCTS WITH REDHIBITORY DEFECTS. ..................................................................................1

II.  GEE HOO BREACHED THE NDA AND MISAPPROPRIATED DUODESK'S TRADE SECRETS. ..................................................................5

III. DUODESK'S DAMAGES ........................................................................10

IV.  GEE HOO'S COUNTERCLAIM ............................................................15

V.   CONCLUSION ........................................................................................15

**TABLE OF AUTHORITIES**

## Cases

*Bevrotte v. Caesars Ent. Corp.*, No. 11-543, 2012 WL 629815, at *2 (E.D. La. Feb. 27, 2012) ........................................................................................................1

*Hospitality Consultants v. Angeron*, 2009-1738 (La. App. 4 Cir. 6/9/10); 41 So.3d 1236 ..............................................................................................................15

*Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99); 739 So. 2d 183 ..................15

*White v. Martin GMC Trucks, Inc.*, 359 So. 2d 1094 (3d Cir. 1978) ......................11

## Statutes

765 Ill. Comp. Stat. Ann. 1065 ............................................................... 10, 14, 15

La. Civ. Code art. 1995 ............................................................................................11

La. Civ. Code art. 2545 .......................................................................................4, 11

La. Civ. Code art. 2548 .............................................................................................4

La. Rev. Stat. Ann. § 51:1431 ................................................................................10

**MAY IT PLEASE THE COURT:**

Plaintiff, Duodesk, LLC ("Duodesk") hereby submits this post-trial memorandum to assist the Court in assessing the evidence presented at the trial, which took place on Wednesday, May 18, 2016 through Friday, May 20, 2016. All references to Joint Exhibits are abbreviated as "JE," and all references to Uncontested Facts (Doc. 163-1) are abbreviated as "Fact."

**I.   GEE HOO BREACHED THE PURCHASE ORDER AND PRODUCT QUALITY AGREEMENT BY SELLING PRODUCTS WITH REDHIBITORY DEFECTS.**

Duodesk proved that Defendant, Gee Hoo Industrial Corporation ("Gee Hoo"), breached the Purchase Order and the Product Quality Agreement (the "PQA"), and that Gee Hoo is liable to Duodesk for breach of the warranty against redhibitory defects.[1]

Dr. Christoph Leonhard, Duodesk's President and founder, testified that he invented and patented the concept of an active motion sitting work station which allows a user to pedal a quiet elliptical exercise machine while working productively in an office setting. Dr. Leonhard and Hank Hsu, President and CEO of Gee Hoo, both testified that the parties' relationship began in 2009 when Gee Hoo began manufacturing the first rendition of Dr. Leonhard's idea, called the

---

[1] Duodesk adequately pled a redhibition claim, contrary to Gee Hoo's argument in its pretrial memorandum (Doc. 187, p. 3-5). Duodesk's allegations meet the pleading standards espoused in each of the cases cited by Gee Hoo. For example, in *Morgan v. General Motors*, a complaint adequately pled a redhibition claim despite failing to use the word "redhibition," by stating that the absence of defects was a material term of the contract and that the thing sold was defective. 14-1058, 2015 WL 1198424, at *2 (W.D. La. Mar. 16, 2015). This language "sufficiently match[ed] up with the language in the statute for redhibition" and "provid[ed] adequate notice" to the defendants, despite the fact that the complaint did not expressly state that the item was useless for its intended purpose. *Id.* Here, Duodesk alleged that Gee Hoo promised to manufacture the activeLife Trainers in accordance with specific quality requirements; that Gee Hoo did not manufacture quality products; that the products were defective; and that because of the high defective rate, Duodesk was forced to stop selling the products immediately after it began selling them (Doc. 1). These allegations put Gee Hoo on notice that Duodesk was alleging that the machines were defective and that, because the machines were intended for retail sales and Duodesk was forced to discontinue its sales, the defects rendered the machines useless for retail. The federal notice pleading standard only requires Duodesk "to set forth in [its] complaint *claims for relief*, not causes of action, statutes or legal theories"). *Bevrotte v. Caesars Ent. Corp.*, No. 11-543, 2012 WL 629815, at *2 (E.D. La. Feb. 27, 2012). Gee Hoo cannot claim that it was surprised by Duodesk's redhibition claim. *See* **JE 278, p.23-24,** Response to Interrogatory No. 22, informing Gee Hoo of redhibition claim; *see also* Doc. 33 (Gee Hoo's motion for summary judgment on redhibition claim, filed July 28, 2015).

LifeBalance Station (the "LBS"). Duodesk contacted Gee Hoo to begin work on a mini version of the LBS, later marketed as the activeLife Trainer (the "aLT"), in or around January 2012 **(Fact. #22)**. Gee Hoo was the manufacturer of the aLTs and was responsible for building all of the components for the aLTs except for the Wahoo sensors **(Facts #28 & 29)**. Gee Hoo completed an initial prototype of the aLT for Duodesk in July 2012 **(JE 15 & 168)**. Dr. Leonhard testified that throughout the development of the aLT, he repeatedly stressed to Hank Hsu the importance of product quality and specifically that the machines must function quietly. This testimony is corroborated by contemporaneous emails wherein Dr. Leonhard addressed defects in the prototype, involving "loud squeaking noises," "oval track marks," and a "roller track side deviation issue," which Hank Hsu agreed to resolve **(JE 31, 37, & 38)**.

Duodesk placed a Purchase Order for the aLTs in August 2013, and Gee Hoo warranted that they would be "of good quality and free from defects in material or workmanship, including, without limitation, that the machines should operate quietly" **(JE 33)**. Duodesk ordered 210 units **(Fact #34)**. Dr. Leonhard testified that the aLTs were intended for retail sale to customers who work in offices, and Hank Hsu's testimony confirmed that he knew of this intention.

Dr. Leonhard testified that the units were supposed to be ready for his inspection in November 2013; however, when he arrived at Gee Hoo's factory in Taiwan, the units were not ready. Gee Hoo manufactured approximately twenty units while Dr. Leonhard was there, but they had multiple defects, and Dr. Leonhard spent several days working with Gee Hoo's engineers to resolve them. Before Dr. Leonhard left Taiwan, Hank Hsu promised in writing that all defects would be fixed. Both parties signed the PQA **(Fact #40)**, which stated that the roller tracks would be no greater than 7mm wide and the machines would have "click free and squeak free operation" **(JE 73, Bates labeled GH 11-12)**. Hank Hsu represented to Dr. Leonhard on

December 2, 2013 that he and his son, James Hsu, each inspected a small number of units and each of the roller tracks measured no greater than 7mm **(JE 42)**. James Hsu, the designated quality assurance manager for Gee Hoo despite his lack of engineering training, testified that he inspected every single unit, which is inconsistent with Hank's Hsu's e-mail **(JE 42)**. There was a difference of opinion between James Hsu and his quality control employees **(JE 43)**.

The aLTs were shipped to Duodesk's Seattle warehouse on December 24, 2013 **(JE 45)**. Dr. Leonhard testified that many units were shipped directly from the warehouse to customers **(JE 543 & 537)**.[2] Out of the 41 machines shipped to customers that Dr. Leonhard inspected, 34 of the machines were defective, exhibiting clicking and squeaking noises and/or oval roller tracks exceeding 7mm **(JE 416)**.[3] Dr. Leonhard testified that these defects were consistent with the defects he observed at Gee Hoo's factory in November 2013. In fact, each of the units that displayed a defect shown in **JE 416** was previously flagged in Gee Hoo's quality control records as containing a defect **(JE 554**, in both Chinese and English**)**.[4] Of the 209 machines inspected, 192 had quality control issues at some point, and 77 indicated problems with unusual sounds **(JE 554)**. Gee Hoo offered no credible evidence that these defects were actually resolved, and Hank Hsu admitted under oath that Gee Hoo's ISO certification for quality management expired five years ago **(JE 8)**. The evidence showed that the aLT defects were caused by Gee Hoo's

---

[2] Dr. Leonhard authenticated **JE 543** (originally Duodesk 128) and showed its relevance, as required (Order, Doc. 191), by identifying them as Duodesk's shipping records. Dr. Leonhard identified and authenticated **JE 537** (originally Duodesk 122) as a summary he created of the voluminous **JE 543**.

[3] As required (Doc. 191), Dr. Leonhard authenticated **JE 416** (originally Duodesk 1) as the spreadsheet he created to summarize **JE 424-505** (originally Duodesk 9-90), voluminous photos and videos of the defective machines, which had been authenticated by Dr. Leonhard and admitted into evidence.

[4] The quality control records associated with the units Dr. Leonhard inspected are included in **JE 554** at pages 614-615, 524-525, 532-533, 590-591, 596-597, 616-617, 538-539, 606-607, 554-555, 578-579, 454-455, 570-571, 452-453, 534-535, 432-433, 574-575, 422-423, 434-435, 406-407, 558-559, 396-397, 444-445, 548-549, 566-567, 568-569, 408-409, 546-547, 560-561, 436-437, 556-557, 512-513, 544-545, 446-447, 572-573, 418-419, 414-415, 400-401, 410-411, 416-417, 398-399, 520-521, and 426-427.

manufacturing and not by shipping **(JE 50)**. Dr. Leonhard testified that the 30 units shipped to the University of Iowa, which remained in palletized condition **(JE 326)**, ultimately contained the very defects that Gee Hoo noted during quality control **(JE 416 & 554)**. Hank Hsu has previously stated that palletized machines would remain in the same condition as when they left Gee Hoo's factory **(JE 48)**. Dr. Leonhard was qualified as an expert in statistical analysis **(JE 541)** and testified that, to a 99% degree of certainty, the units remaining in the Seattle warehouse that were not personally inspected had a defective rate of between 63% and 95%. Dr. Leonhard showed the Court the physical aLT machine **(JE 422)**, and it exhibited a high pitched squeak. As the manufacturer of the machines, Gee Hoo is deemed to have knowledge of these redhibitory defects. La. Civ. Code art. 2545.  Even if that were not the case, Duodesk has demonstrated that Gee Hoo had actual knowledge of these defects before it shipped the units to Duodesk.

Dr. Leonhard testified that he would never have purchased the aLTs if he had known that they would have this high defective rate and would be useless for retail. He testified that although the PQA stated that Duodesk would accept a defective rate of 5% without recourse, and Gee Hoo would "take back" defective units exceeding 5% **(JE 73)**, he never imagined that the defective rate would be 63% to 95%, and he never limited, and did not intend to limit, Duodesk's legal remedies to a mere return of the purchase price in the event of a total breach of contract.[5] He testified that the defects left Duodesk in "dire straits" without a retail product to sell.

After Dr. Leonhard discovered that the aLTs sent to his customers were defective, he notified Gee Hoo immediately **(JE 46 & 47)**. Dr. Leonhard testified that in January 2014, Duodesk stopped sales and marketing efforts due to the high defective rate. In March 2014, Gee Hoo agreed to refund $26,660 of the purchase price, in exchange for the return of the units. Dr.

---

[5] Duodesk did not waive the warranty against redhibition. *See* La. Civ. Code art. 2548 (requiring such a waiver to be "clear and unambiguous" and to be brought to the attention of the buyer).

-4-

Leonhard testified that within a day or two of accepting the refund, he learned that he could possibly mitigate Duodesk's damages by selling defective machines for research purposes. Dr. Leonhard informed Gee Hoo that the partial refund did not make Duodesk whole, and that he intended to try to sell the defective units to mitigate Duodesk's damages instead of returning them **(JE 49, 54, 313, & 335)**.[6] Dr. Leonhard testified that in May 2014, Duodesk began to attempt to sell the defective aLTs as "beta versions" with prominent disclaimers about the defects, which is not a normal retail practice **(JE 305)**. Although Hank Hsu was initially angry that Duodesk did not return the machines, after further discussions, he agreed to come back to the project **(JE 257)**. Hank Hsu agreed to create "a new sample" of the activeLife Trainer using "hi-end machine parts" **(JE 261)**. The parties stipulated that during the conversations between Gee Hoo and Duodesk regarding the defects, Dr. Leonhard suggested ways to improve the products' design and specifications **(Fact #44; JE 261)**. Hank Hsu later refused to send the sample he had agreed to make, at which point the relationship was not salvageable. Thereafter, Duodesk contracted with a new manufacturer. Dr. Leonhard testified that despite effort to mitigate the damages, Duodesk was unable to fully recover the losses caused by Gee Hoo's defective products. The damages to which Duodesk is entitled are discussed below.

## II.    GEE HOO BREACHED THE NDA AND MISAPPROPRIATED DUODESK'S TRADE SECRETS.

Duodesk proved that Gee Hoo blatantly breached the Non-Disclosure and Confidentiality Agreement ("NDA"), with respect to both the LBS and the aLT. Gee Hoo and Dr. Leonhard signed the NDA **(Facts #11 & 12)**,[7] pursuant to which Gee Hoo agreed not to use Success

---

[6] The Court has determined that Gee Hoo has not shown that Duodesk's claims were compromised, and that Duodesk is "entitled to retain the [activeLife Trainers] until its redhibitory claims against Gee Hoo are resolved." (Doc. 92, pp. 4-6 & 8). Dr. Leonhard and Chunlin Leonhard both testified that in accepting a partial refund of the purchase price, they never intended to compromise Duodesk's claims.

[7] Duodesk introduced the original Chinese version of the NDA **(JE 1)** and an English translation **(JE 165)**.

Behavior, LLC's confidential and proprietary product and business information for any purpose other than to assist with product development, design, manufacturing, evaluation, and comprehensive guidance, without prior written consent **(Fact #15)**. The NDA inures to the benefit of successors and assignees **(JE 165; Fact #17)**. Dr. Leonhard testified that Success Behavior, LLC assigned all rights under the NDA to Duodesk upon Duodesk's creation.

With respect to the LBS (photos shown in **JE 112**), Dr. Leonhard testified that after Gee Hoo signed the NDA, he shared with Gee Hoo his confidential business plan **(JE 23)** and product specifications. On October 19, 2009 **(JE 179, with attachment JE 539)**,[8] Dr. Leonhard suggested specific changes to Gee Hoo's GP 7006 model to create a machine "considerably different" from Gee Hoo's model, including particular leg geometry and other key features **(JE 182, 139, & 133)**. Hank Hsu claimed that the machine with the attached desk shown on Gee Hoo's website **(JE 10)** (the "LBS Clone") was different from the LBS because the LBS ultimately manufactured was based on model GP 7004, not GP 7006 **(JE 297**, **Suppl. Resp. to Interrog. 21, pp. 5-6)**. However, the LBS Clone that Gee Hoo made for its own purposes and showed at the TaiSPO trade show in March 2014 **(JE 10)** had the exact same features that Dr. Leonhard recommended to Gee Hoo on October 19, 2009 – expressly subject to the provisions of the NDA – to make the product suitable for desk use. These features include, but are not limited to, recommendations to remove the "upward extensions at the front cross member," the "entire arm lever mechanism," and "the hump between the foot pedals" **(JE 539, p.1-2, 6-7)**. Hank Hsu freely admitted at trial that he created the LBS Clone and displayed it at TaiSPO despite the NDA. Mr. Hsu testified that he did so because Duodesk did not place any additional orders for the LBS, and he believed it was "unreasonable" for Gee Hoo to be bound by the NDA for any

---

[8] Dr. Leonhard authenticated **JE 539** (originally Duodesk 124) and showed it to be relevant, as required (Doc. 191), by testifying that he authored the document and attached it to the email contained in **JE 179**.

longer than three years. This testimony demonstrates a blatant disregard for Duodesk's rights under the NDA. Significantly, Hank's Hsu's testimony confirms that Gee Hoo developed this infringing machine and offered it for sale to customers at the TaiSPO trade show in early March 2014 **(JE 49**, showing date of tradeshow) *before* the dispute between the parties concerning the refund/return of the defective activeLife Trainers had occurred.

Duodesk contacted Gee Hoo to begin work on a "mini LBS" (later called the aLT) in or around January 2012 **(Fact. #22)**. Duodesk proved that the NDA extended to the aLT because Dr. Leonhard made it clear to Hank Hsu that the confidential information for the aLT fell under the NDA, and Hank Hsu acknowledged that he would keep it confidential **(JE 168)**. Dr. Leonhard also marked his agenda for a meeting regarding the "Mini LifeBalance Station" as confidential in Fall 2012 **(JE 18)**. With respect to the aLT, Dr. Leonhard testified that his contributions included: improved leg geometry, which creates an ergonomic advantage by using a range of pedal angles consistent with a human foot; creating a mechanism to attach the unit to an office chair; making the machine white to be more attractive to office workers; using an additional clip to secure the plastic cover; and lowering the heel height to allow for use under a desk **(JE 168, 17, 26, 258, 31, 18 & 255)**. Gee Hoo stipulated that Dr. Leonhard contributed the ideas of low pedal height and a three-hole plate to attach a user's chair **(Facts #32 & 33)**.

Gee Hoo stipulated that Gee Hoo's factory designation for the aLT is GB3030 mini, or GB 3030 mini-elliptical **(Fact. #30)**, and that its factory designation for the 2014 Ankle Trainer is GB3030EP Elliptical Type small bike **(Fact. #70)**. Gee Hoo stipulated that it displayed the 2014 Ankle Trainer at the ISPO trade show in February 2015 **(Fact #58)**.

Robert Bartlett, P.E., Duodesk's mechanical engineering expert, examined CAD drawings that Gee Hoo produced bearing the model number for the aLT (Model C) and the 2014

-8-

Ankle Trainer (Model D) **(JE 587, pgs. GH 635-640)**. He also examined CAD drawings for other mini-elliptical machines that Gee Hoo claims it created in 2010 and 2011 (Models A, B, and E) **(JE 587, pgs. GH 626-634)**. Model B pertains to Gee Hoo's GB7011-Ankle Trainer **(JE 587, pgs. GH 629-631)**. Mr. Bartlett testified that the drawings for Gee Hoo's 2014 Ankle Trainer (Model D) show that this machine features characteristics derived from Duodesk's aLT (Model C), which were not present in any of the prior machines (Models A, B, and E), including: identical low pedal height; identical pedal configuration, leg geometry, and ergonomics; a similar mechanism for attaching an office chair; and a extra stabilization clip to secure the plastic cover. Mr. Bartlett demonstrated this by showing that Figure C-1 of the aLT and Figure D-1 of the 2014 Ankle Trainer overlay perfectly. This establishes that Gee Hoo manufactured at least one version of the 2014 Ankle Trainer that is identical in these key respects to Duodesk's aLT.

Mr. Bartlett also testified that Gee Hoo manipulated Figures C-2 and D-2 such that those drawings do not contain true dimensions, and that the discrepancies he observed could not happen by accident. Gee Hoo offered no contrary factual evidence to rebut the testimony that the drawings were purposely manipulated. The fifteen pages of CAD drawings that Mr. Bartlett examined are the only drawings Gee Hoo produced in response to Duodesk's discovery requests seeking documents related to the development and design of the aLT.[9] Mr. Bartlett testified that to produce machines of this type, a manufacturer would generate *hundreds* of drawings.[10] If the Court finds that Gee Hoo intentionally manipulated the drawings and failed to produce other responsive drawings, the Court should draw an adverse inference and conclude that Gee Hoo

---

[9] The referenced CAD drawings were the subject of Judge Knowles' Order imposing sanctions against Gee Hoo (Doc. 155), which this Court affirmed (Doc. 186).

[10] In connection with Duodesk's first Motion to Compel (Doc. 24) and Duodesk's Motion for Sanctions (Doc. 141), Gee Hoo represented to the Court that it had produced all responsive documents related to the development and design of the activeLife Trainer.

engaged in this conduct to hide its violations of the NDA with respect to Duodesk's aLT.

Mr. Bartlett also testified regarding his examination of the three machines produced by Gee Hoo: (1) the aLT **(JE 576)** ("the C machine"); (2) the GB 7011-Ankle Trainer **(JE 577)** ("the B machine"); (3) GB3030EP Elliptical Type small bike **(JE 578)** (the "D-prime machine").[11] Mr. Bartlett testified that all three machines share the same plastic cover. He also testified that the B machine and the C machine appear to match the drawings Gee Hoo provided with the corresponding model numbers **(JE 587, pgs. GH 629-631, 635-637)**. However, Mr. Bartlett testified that the D-prime machine, which Gee Hoo held out as the 2014 Ankle Trainer (GB3030EP Elliptical Type small bike), did not match the CAD drawings of Model D showing the corresponding model number **(JE 587, pgs. GH 638-640)**. This testimony showed that either the drawings for the 2014 Ankle Trainer that Gee Hoo produced to Duodesk are not true and correct drawings of the 2014 Ankle Trainer sample (D-prime) that Gee Hoo actually created, or that the D-prime machine is not a true embodiment of the drawings.

Despite the fact that the D-prime machine is not the machine shown in the drawings for Model D, Mr. Bartlett examined the B machine, the C machine, and the D-prime machine, and he testified that Gee Hoo's 2014 Ankle Trainer (the D-prime machine) features characteristics derived from Duodesk's aLT (the C machine) that were not present in the GB7011-Ankle Trainer machine (the B machine), which Gee Hoo claims it created prior to aLT. These characteristics include: similar pedal configuration, leg geometry, and ergonomics; and a similar mechanism for attaching a user's office chair. Mr. Bartlett testified that the chair attachment mechanism on the D-prime machine is not designed to be used as a cup holder but rather for attachment of an office chair. Gee Hoo produced no expert to rebut Mr. Bartlett's testimony.

---

[11] The model numbers for **JE 577** & **578** are included on the Joint Exhibit List (Doc. 200).

The NDA provides for injunctive relief **(JE 165)**. Additionally, Duodesk is entitled to damages for Gee Hoo's blatant disregard for, and breaches of, the NDA. Duodesk has also shown that Gee Hoo misappropriated Duodesk's trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), entitling Duodesk to damages. 765 Ill. Comp. Stat. Ann. 1065/1-1065/9.[12] The misappropriation was willful and malicious, as shown by Hank Hsu's testimony that he blatantly disregarded Duodesk's rights under the NDA. Further, Hank Hsu freely admitted that the only reason he had not sold the 2014 Ankle Trainer was the existence of this lawsuit. Dr. Leonhard testified that when he invented his idea for seated active motion technology in an office setting, there were no products on the market that offered his unique contributions. He testified that he never would have provided confidential information to Gee Hoo had it not entered into the NDA, and Dr. Leonhard reminded Hank Hsu that confidentiality was a particular concern and that he desired to seek patent protection **(JE 168 & 28)**. Dr. Leonhard patented the technology for the LBS **(JE 7)** and the aLT **(JE 414)**. Thus, the information that Duodesk shared under the protections of the NDA derived an independent economic value from not being generally known to, and not being readily ascertainable by, other persons, and Duodesk engaged in reasonable efforts to maintain its confidentiality. 765 Ill. Comp. Stat. Ann. 1065/2. Gee Hoo signed the NDA **(JE 165)** and assured Dr. Leonhard that it would maintain the confidentiality of the information **(JE 168)**, and thus Gee Hoo knew that it had a duty to maintain the secrecy of, and limit use of, the confidential information. The specific damages caused by Gee Hoo's breach of the NDA and misappropriation of trade secrets are discussed below.

### III.  DUODESK'S DAMAGES

In connection with the breach of the Purchase Order and the PQA, Duodesk is entitled to

---

[12]  The NDA is governed by Illinois law **(JE 165; Fact #14)**. In the event that the Court finds otherwise, Gee Hoo has also violated the Louisiana Trade Secrets Act ("LTSA"). La. Rev. Stat. Ann. § 51:1431-1439.

recover losses sustained and profits deprived. La. Civ. Code art. 1995. Because Gee Hoo is a manufacturer deemed to know of the redhibitory defects, Duodesk is entitled to recover from Gee Hoo "the return of the purchase price with interest from the time it was paid, [] the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." La. Civ. Code art. 2545; *see also White v. Martin GMC Trucks, Inc.*, 359 So. 2d 1094 (3d Cir. 1978) (affirming redhibitory damage award including return of purchase price for defective dump trucks, delivery charges, insurance premiums, repairs to the trucks, the mechanics' repair time, rental of substitute trucks, lost profits, and attorneys' fees).

Dr. Leonhard testified that as a result of Gee Hoo's sale of the defective aLTs, Duodesk suffered damages, including wasted costs developing the aLT with Gee Hoo, totaling $20,586.24[13] **(JE 549D, Duodesk Demonstrative #4G)**;[14] marketing costs for the aLT rendered useless by Gee Hoo's breach, totaling $14,376.75 **(JE 549D, Duodesk Demonstrative #4F)**; cost of the Wahoo sensors installed into the defective machines and thus rendered useless, totaling $8,092.68 **(JE 549D, Duodesk Demonstrative #4D)**; shipping costs for the defective machines, totaling $4,486.44 **(JE 549D, Duodesk Demonstrative #4E)**; and storage costs, totaling $6,267.61 **(JE 549D, Duodesk Demonstrative #4A)**. Even though Gee Hoo requested that the machines be returned in March 2014, Duodesk could not have generated additional sales of the units totaling $7,675.00, for which Gee Hoo is being credited, had Duodesk returned the machines **(JE 537)**. For this reason, Gee Hoo should bear the storage costs for these units. Duodesk proved these damages through its Quickbooks records **(JE 549D, Duodesk**

---

[13] Because of Gee Hoo's breach, Duodesk has had to spend additional sums to develop the activeLife Trainer 2.0 version with a new manufacturer. Through February 15, 2016, Duodesk spent an additional $8,553.82 to develop the new machine **(JE 549D, Duodesk Demonstrative #4B).**

[14] Duodesk's Demonstratives #4 and #4A through #4G were admitted as substantive evidence.

-11-

**Demonstrative #4)**, which Dr. Leonhard testified were audited by Duodesk's accountant.

Duodesk also would have been able to sell all 210 units, had they not been defective, such that Duodesk is also entitled to the lost profits for these machines. Dr. Leonhard testified, without contradiction, that his invention garnered substantial media interest **(JE 6, 57, & 59)**. Multiple peer-refereed studies have been performed on Duodesk's active seated motion technology, and these studies show that Dr. Leonhard's invention offers multiple health benefits **(JE 11, 387A, 387B, 387C, & 387D)**. Further, at the time that the Carr Study was published on-line in August 2015, Duodesk had a spike of activity on its website and YouTube video **(JE 57 & 59)**, but Duodesk was unable to capitalize on those sales because it had only defective units. Further, since January 2014, other companies, such as FitDesk, Cubii, and Lifespan, have now entered the market before Duodesk, causing Duodesk to lose its opportunity to enter this emerging market and take advantage of its comprehensive market and business research. Gee Hoo offered no evidence to rebut Duodesk's evidence of lost market opportunity, and offered no evidence to suggest that Duodesk would be unable to sell, at minimum, the 210 units it purchased from Gee Hoo had they not been defective. With an expected sales price of $495/unit, a unit cost of $155/unit, Taiwan to Seattle freight charges of $21/unit, Wahoo sensor cost of $38/unit, customer shipping costs of $50/unit, and storage costs of $30/unit, the anticipated profit was $201/unit.[15] Thus, Duodesk's total lost profits from the 210 defective units are $42,210.00.[16]

After crediting Gee Hoo with the partial return of the purchase price totaling $26,660 **(Fact #47)** and Duodesk's sales of the machines totaling $29,886 **(JE 537)**, Duodesk is entitled to damages in the amount of $72,053.72, plus interest and reasonable attorney's fees, as follows:

---

[15] In its pre-trial memo, Duodesk conservatively estimated anticipated profits at $195/unit. Duodesk notes that $201/unit is more conservative than the approach suggested by Gee Hoo's expert of lost profits of $233/unit or $206/unit. *See* **JE 588** (noting sales price of $495 and various variable costs).

[16] Duodesk is also entitled to future lost profits as a result of Gee Hoo's breach.

| Redhibition Damages | Damages | Credits | Total Damages |
|---|---|---|---|
| Return purchase price | $ 32,550.00 | | $ 32,550.00 |
| Wasted development of activeLife Trainer (Demonst. 4G) | $ 20,586.24 | | $ 53,136.24 |
| Wasted marketing of activeLife Trainer (Demonst. 4F) | $ 14,376.75 | | $ 67,512.99 |
| Wahoo sensors (Demonstrative 4D) | $ 8,092.68 | | $ 75,605.67 |
| Shipping costs (Demonstrative 4E) | $ 4,486.44 | | $ 80,092.11 |
| Warehouse costs (Demonstrative 4A) | $ 6,267.61 | | $ 86,359.72 |
| Profits from sale of 210 units ($201x210) | $ 42,210.00 | | $ 128,569.72 |
| Refund of Purchase price | | $ 26,630.00 | $ 101,939.72 |
| Total sales of units | | $ 29,886.00 | $ 72,053.72 |
| Attorney's fees, in an amount to be determined by the Court | TBD | | TBD |

Gee Hoo's accounting expert, Jason MacMorran, suggested that Duodesk's damages calculations were not reliable because Dr. Leonhard may have input information into Quickbooks incorrectly, citing an additional $9,000 of expenses that were added to Quickbooks between September 2015 and the trial date. However, Mr. MacMorran was unable to state whether Duodesk sought any of these expenses as damages. Duodesk has not. *See, e.g.,* **JE 549; Duodesk Demonstrative #4, p.12** ($5,000 of legal fees not sought as damages). Mr. MacMorran also questioned whether certain claimed expenses could be attributed to Gee Hoo, such as the purchase of an Ikea desk, an in-flight beer, and certain insurance costs. The vast majority of these allegedly improper damages pertain to Duodesk's development of the LBS, and have no bearing on the damages for the redhibitory defects in the aLT units. *See* Duodesk Demonstrative 4 at pp. 8-10. The Ikea desk identified by Mr. MacMorran was included as a video prop in the marketing costs for the new mini elliptical product, and do not form any part of the damages sought by Duodesk.[17]

Mr. MacMorran's damages calculation was also fundamentally flawed. He could not identify a single redhibition claim on which he has worked, and he admitted that he was not

---

[17] Duodesk presented evidence of development costs for the new machine to establish that the development costs for the aLT manufactured by Gee Hoo were rendered wasted by Gee Hoo's defective products. Dr. Leonhard testified that Duodesk had to start again with a new manufacturer to develop a new product.

aware of the categories of damages that are legally permitted in a redhibition claim. He also admitted that he had been retained only to consider lost profits, and nothing else. He further admitted that Gee Hoo's anticipated revenues for the 210 units, had they not been defective, was $103,950, and that if Duodesk had received this amount, it would have been able to recoup some of the expenses it had already incurred, such as the unit cost and the cost of the Wahoo sensor. For this reason, Mr. MacMorran's deduction of these expenses from the amounts to which Duodesk would otherwise be entitled makes no logical sense. At minimum, as an alternative, the Court should find that Duodesk is entitled to the revenues it was expecting to achieve from the sale of non-defective units, or $103,950, less the $26,630 refund Duodesk received from Gee Hoo and $29,886 in sales Duodesk managed to achieve, for damages of $47,434, plus attorneys' fees and costs.

In compensation for Gee Hoo's breach of the NDA and/or its willful and malicious misappropriation of trade secrets, Duodesk is entitled to injunctive relief, prohibiting Gee Hoo from selling Duodesk's aLT, the 2014 Ankle Trainer, and the LBS Clone. Duodesk is also entitled to payment of a reasonable royalty for Gee Hoo's use of Duodesk's trade secrets, or another reasonable measure of damages to prevent Gee Hoo from profiting from its wrongful conduct. 765 Ill. Comp. Stat. Ann. 1065/3. Additionally, as set forth in Duodesk's pretrial memorandum (Doc. 189), Duodesk is entitled to damages in the amount that Gee Hoo was unjustly enriched through its impermissible use of Duodesk's confidential information and trade secrets, which can be measured as the costs Duodesk incurred to develop the LBS and the aLT. Duodesk's hard costs incurred for the development and prototyping of the aLT ($20,586.24) and the LBS ($79,715.15) are contained in **JE 549D (Duodesk Demonstratives #4C and #4G)**.

Dr. Leonhard testified that he spent substantial time and resources developing the LBS

and the aLT, and creating detailed business plans, including taking part-time professor status in lieu of full-time status and making multiple trips to Taiwan to teach Gee Hoo how to create machines that embody his ideas. Dr. Leonhard is entitled to reasonable compensation for his time spent developing these products. Dr. Leonhard testified that his time spent developing the LBS is valued at $88,914.[18] Additionally, ITSA entitles Duodesk to an award of attorneys' fees for this willful and malicious misappropriation of its trade secrets. 765 Ill. Comp. Stat. Ann. 1065/5.[19]

## IV.   GEE HOO'S COUNTERCLAIM

Gee Hoo did not carry its burden of proof on its counterclaim. Gee Hoo never asked Duodesk to pay for any "engineering costs" or costs for overhead, tooling, logos, or lost profits **(Facts #65 & 66; JE 32 & 279, p.8-12)**. Dr. Leonhard testified that Gee Hoo stated its intention to recover these costs from the price charged per unit. Further, Gee Hoo offered only its testimony and no supporting documentation to support the vast majority of its damages claims. Further, the equitable remedy of detrimental reliance is unavailable where, as here, a contract governs. *Hospitality Consultants v. Angeron*, 2009-1738 (La. App. 4 Cir. 6/9/10); 41 So.3d 1236, 1241-42. Finally, Gee Hoo is not entitled to attorneys' fees because it has not identified any authorizing contract or statute. *Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99); 739 So. 2d 183, 185 ("attorney fees are not allowed except where authorized by statute or contract.").

## V.   CONCLUSION

For these reasons and those established at trial, the Court should enter judgment in favor of Duodesk and against Gee Hoo, awarding damages and injunctive relief to Duodesk as set forth herein, plus costs of court and reasonable attorneys' fees.

---

[18] Dr. Leonhard testified that he worked on the LBS for 10 hours/week from September 2009-December 2011 (116 weeks) at $76.65/hour, or $88,914.

[19] LTSA also allows recovery of attorneys' fees under these circumstances. La. Rev. Stat. § 51:1434.

Respectfully submitted,

/s/ Carey L. Menasco
Carey L. Menasco (Bar #28131)
Mirais M. Holden (Bar #35173)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
clmenasco@liskow.com
mholden@liskow.com

Chunlin Leonhard (Ill. Bar #6239481)
(admitted *pro hac vice*)
1414 Audubon Street
New Orleans, Louisiana 70118
Telephone: (312) 560-6708
Facsimile: (504) 861-5739
leonhardchunlin@gmail.com

***Attorneys for Plaintiff Duodesk, LLC***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon all counsel of record via the CM/ECF system, this 27th day of May, 2016.

/s/ Carey L. Menasco

4452946_1